David M. Lilienstein, SBN 218923 (*Pro Hac Vice* Pending)
david@dllawgroup.com
Katie J. Spielman, SBN 252209 (*Pro Hac Vice* Pending)
katie@dllawgroup.com
DL LAW GROUP
345 Franklin St.
San Francisco, CA 94102
(415) 678-5050
(415) 358-8484 (fax)

Justin Frankel jcf@frankelnewfield.com
Jason Newfield jan@frankelnewfield.com
FRANKEL & NEWFIELD, P.C.
1 Old Country Road, Suite 429
Carle Place, NY 11514
(516) 222-1600
(516) 222-0513 (fax)

*Attorneys for Plaintiff Oliver W.*

## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

---

OLIVER W.,

        Plaintiff,

  - against -

BEACON HEALTH OPTIONS, INC.,

        Defendant.

ECF

**COMPLAINT**

---

Plaintiff OLIVER W., by his attorneys, Frankel & Newfield, P.C. and DL Law Group, complaining of Defendants BEACON HEALTH OPTIONS, INC., alleges:

### JURISDICTION AND VENUE

1. This is an action by a resident of the State of New York to recover benefits under an insurance policy issued to Oliver W. in New York by a New York insurance company that is governed by the laws of New York. As such, this Court has jurisdiction over this matter.

2. At all relevant times, Plaintiff Oliver W. was and is a resident of the State of New York.

3. At all relevant times, upon information and belief, Defendant Beacon Health Options, Inc. ("Beacon") was and is a foreign corporation doing and transacting business in the state of New York.

4. Beacon is a Virginia corporation with a principal place of business at 1400 Crossways Blvd., Suite 101, Chesapeake, Virginia 23320.

5. The Court has jurisdiction because (i) there is complete diversity of citizenship between Plaintiff and Defendant, and (ii) more than $75,000, exclusive of interest and costs, is at stake.

**NATURE OF ACTION**

6. This action is brought by Plaintiff Oliver W., against Defendant Beacon, for breach of contract, for willfully failing and refusing to pay further health insurance benefits, pursuant to the terms and conditions of Plaintiff's contract of insurance.

7. This action is also brought by Plaintiff against Defendants Beacon for wrongful conduct, fraud, misrepresentations, deceptive practices, and failure to act in good faith in its consideration and review of Plaintiff's claim for benefits.

8. The purpose of health insurance is to provide an insured, including his dependent, with protection and peace of mind that their healthcare costs and services will be covered in the event the insured receives medically necessary healthcare treatment.

9. Upon information and belief, it was upon this understanding that Plaintiff and his dependents would enjoy these protections if he or his dependents filed a claim with Defendant, that he purchased these policies from or otherwise caused himself and his family to be insured by

Defendant, and timely paid premiums to, or otherwise caused he and his family to be covered by, Defendants.

### ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

10. At all relevant times, Plaintiff Oliver W. participated in THE EMPIRE PLAN, NEW YORK STATE HEALTH INSURANCE PLAN ("the Policy"), an employee welfare benefit plan sponsored by the New York Department of Civil Service.

11. At all relevant times, Defendant Beacon was the mental health claims administrator for the Policy.

12. Defendant Beacon is a health insurance company authorized to transact and currently transacting business in the State of New York.

13. At all relevant times, the Policy offered, *inter alia*, mental health benefits to State employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Policy's mental health claims administrator, Beacon.

14. Plaintiff Oliver W. is, and at all relevant times, was I.W.'s parent and legal guardian, and had legal responsibility for her care, health, and welfare. I.W. is non-binary and will hereinafter be referred by the pronoun "they."

15. At all relevant times, Plaintiff Oliver W. was the individual responsible for I.W.'s health coverage, as that term ("responsible individual") is defined by the Department of the Treasury, Internal Revenue Service.

16. I.W. was a member of the subject health insurance benefits Policy.

17. I.W. has a long history of mental illness and serious emotional disturbances, which at all times relevant only worsened and became more dramatic, to the point where, as set forth below, they were a threat to their life and others.

18. I.W. suffers from, *inter alia*, bipolar disorder, O.C.D., self-harm and suicidal ideation, anorexia, gender dysphoria, and substance use disorder.

19. I.W. began displaying O.C.D. symptoms when they were around eight years old, when they began many rituals, such as repeating words, and reporting every action they took.

20. I.W. has been in outpatient therapy since sixth grade.

21. Despite ongoing outpatient treatment, I.W.'s condition worsened. They continued to cut themself. Eventually, their self-harm, depression, and suicidal ideation became so severe that they were admitted to Four Winds Hospital in November of 2017.

22. Following their discharge from Four Winds Hospital, I.W. was treated at Astor Services for Child and Families partial hospitalization program in December of 2017.

23. Following their discharge from the partial hospitalization program, I.W. continued to deteriorate. They suffered from ongoing self-harm, auditory and visual hallucinations, rapid cycling bipolar episodes, paranoia, and anorexia.

24. As a result of worsening psychotic episodes, I.W. was once again admitted to Four Winds Hospital in September of 2018.

25. Again, following their discharge and despite ongoing outpatient therapy, I.W.'s condition continued to worsen. Their anorexia became so severe that their weight reached only 88 pounds. I.W. was treated at a psychiatric eating disorder program from January 2019 to May of 2020.

26. I.W. continued to suffer from mood dysregulation, self-injury, psychosis, and extreme decline in function. The severity of their conditions led to three more hospitalizations between 2019 and 2021.

27. In January 2021, I.W. was admitted to Silver Hill Hospital's residential DBT therapeutic program but was unable to complete it due to self-harm and suicidality. As a result, I.W. was again admitted to Silver Hill Hospital in February of 2021.

28. As a result of their worsening condition, the failure of prior treatment attempts, and at the recommendation of their treating providers, I.W. was admitted to View Point Residential Treatment Center ("View Point").

29. At all relevant times, I.W.'s treatment at View Point was medically necessary based upon the reasoned opinion of I.W.'s numerous mental health care providers.

30. Plaintiff filed a claim with Beacon to cover the cost of I.W.'s mental health treatment and care at View Point, as was required under the terms and conditions of the Plan.

31. Beacon denied Plaintiff's claims for I.W.'s treatment at View Point.

32. Plaintiff appealed Beacon's denial and provided voluminous amounts of supporting medical records. All of the medical professionals who treated I.W. agreed that the treatment at View Point was medically necessary.

33. Beacon denied Plaintiff's appeal for I.W.'s treatment at View Point.

34. At the recommendation of I.W.'s treatment team at View Point, I.W. was admitted to Elevations Residential Treatment Center ("Elevations").

35. At all relevant times, I.W.'s treatment at Beacon was medically necessary based upon the reasoned opinion of I.W.'s numerous mental health care providers.

36. Plaintiff filed a claim with Beacon to cover the cost of I.W.'s mental health treatment and care at Elevations, as was required under the terms and conditions of the Plan.

37. Beacon denied Plaintiff's claims for I.W.'s treatment at Elevations.

38. Plaintiff appealed Beacon's denial and provided voluminous amounts of supporting medical records. All of the medical professionals who treated I.W. agreed that the treatment at Elevations was medically necessary.

39. Beacon denied Plaintiff's appeal for I.W.'s treatment at Elevations.

40. Not only was Beacon's denial unreasonable in light of the obvious medical necessity for I.W.'s ongoing care at a residential treatment center, but the denial also violated the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for approving all of the care for I.W. that is at issue herein.

41. As a direct and proximate result of Beacon's claim denials, Plaintiff was forced to pay substantial sums of money, out-of-pocket, in excess of this court's jurisdiction, for I.W.'s treatment at View Point and Elevations.

## AS AND FOR A FIRST CAUSE OF ACTION

### (Breach of Contract against BEACON HEALTH OPTIONS)

42. Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth more fully herein in this cause of action.

43. At all relevant times I.W. was a beneficiary in the Policy.

44. At all times relevant, the Policy provided health insurance benefits that were administered by Beacon.

45. At all times relevant, Plaintiff performed all terms, conditions and obligations required of them under the Policy.

46. At all times relevant, the Policy was in full force and effect.

47. At all relevant times, I.W.'s treatment at View Point and Elevations was medically necessary, based upon the reasoned medical opinions of I.W.'s numerous mental health providers.

48. In denying the mental health claims as set forth above, Defendant has breached and continued to breach the terms of the health plan that is the subject of this litigation.

49. As a direct and proximate result of Defendant's claim denial, Plaintiff was forced to pay substantial sums of money, out-of-pocket, in excess of this court's jurisdiction, for I.W.'s treatment at View Point and Elevations.

50. As a direct and proximate result, of Defendant's claim denial, Plaintiff has been damaged in an amount equal to the mental health benefits owing, plus interest, that amount increasing monthly, as a result of the conduct alleged herein.

51. In denying the mental health claims set forth above, Defendant has breached and continue to breach the terms of the health plan contract that is the subject of this litigation.

## AS AND FOR A SECOND CAUSE OF ACTION

### (Breach of Covenant of Good Faith and Fair Dealing (Bad faith) against BEACON HEALTH OPTIONS)

52. Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth more fully herein in this cause of action.

53. At all times herein relevant, Defendant agreed to act in good faith and deal fairly with Plaintiff. Defendant thereby assumed a special relationship with and fiduciary-like obligations to Plaintiff and agreed to abide by said duties. Nevertheless, Defendant refused and failed to act in good faith and deal fairly with Plaintiff, and breached said obligations, as is set forth more particularly in this Complaint.

54. In the absence of a reasonable basis for doing so, and with full knowledge and/or conscious disregard of the consequences, Defendant failed and refused to provide Plaintiff the benefits promised under the Plan, under the laws of New York.

55. Defendant knowingly, intentionally, recklessly and regularly, to the detriment of plan participants and other insureds, including but not limited to Plaintiff, engaged and continue to engage, as a pattern and practice, in conduct to further their own economic interest and in violation of its contractual and fiduciary obligations to Plaintiff, including but not limited to:

   a. Unreasonably denying the benefits of the Plan;

   b. Regularly and recklessly misrepresenting pertinent Plan provisions and coverages at issue;

   c. Regularly and recklessly using proprietary mental health level of care guidelines that fall below reasonable standards in the medical community;

   d. Regularly and recklessly supplanting plan language regarding medical necessity by substituting mental health level of care guidelines;

   e. Regularly and recklessly deviating from plan terms defining medical necessity; generally, and by using mental health level of care guidelines that fall below reasonable standards in the medical community;

   f. Regularly, recklessly and intentionally using and requiring acute and not sub-acute criteria to approve claims at the intermediate, residential treatment inpatient level of care;

   g. Regularly and recklessly misrepresenting and or ignoring relevant, if not determinative medical evidence that supports approving and paying a claim, in order to save money and increase profits, at the expense of plan participants, including but not limited to Plaintiff;

   h. Regularly and recklessly misrepresenting and or disregarding the opinions of treating physicians and therapists;

    i.    Regularly and recklessly denying benefits based on insufficient, inadequate, and biased medical analyses;

    j.    Regularly and recklessly putting the burden to investigate a claim on insureds;

    k.    Regularly and recklessly failing to place the financial interests of its insureds on an equal par with Defendant's own financial interests;

    l.    Regularly and recklessly failing to objectively evaluate Plaintiff's claim and attempting to find reasons not to pay their claim;

    m.    Regularly and recklessly failing to conduct a full and fair investigation;

    n.    Regularly and recklessly conducting a medical analysis of the claim by medical personnel who sought to provide a pretext for denying Plaintiff's claim, instead of looking for reasons to pay the claim and instead of crediting the wealth of medical information establishing medical necessity, as defined under the terms and conditions of the Plan;

    o.    Regularly and recklessly failing to consider the requirements of the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for overturning Defendants' claim denial(s) at issue herein;

    p.    Regularly and recklessly shifting the burden of investigation onto its insureds; and

    q.    Regularly and recklessly engaging in an unlawful pattern of practice for denying medically necessary residential treatment in order to save money and increase profits.

56.    In doing the acts listed above, Defendant breached the covenant of good faith and fair dealing, and engaged in unfair claim settlement practices.

57.    Defendant continue to engage in the aforementioned acts and said conduct and bad faith constitutes a continuing tort and continuing bad faith to Plaintiff, causing continued damage as described herein beyond the date of the filing of this action.

58. As a direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has been damaged in an amount in excess of the jurisdiction of this Court, to be determined at trial.

59. As a further direct and proximate result of the aforementioned conduct of Defendant, Plaintiff suffered financial, mental and emotional distress, including, but not limited to, fear, aggravation, depression, humiliation and anxiety, and have thereby incurred general damages in a sum in excess of the jurisdiction of this court to be determined according to proof at trial.

60. As a further, direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has been obliged to expend or incur liability for costs of suit, attorneys' fees and related expenses in an amount not yet fully ascertained, but which will be submitted at the time of trial.

61. As a further, direct and proximate result of the aforementioned conduct of Defendant, Plaintiff has suffered other special damages in amounts according to proof at the time of trial which include, but are not limited to, Plaintiff's inability to replace the Plan under the terms and conditions represented to them.

62. In doing the acts set forth above, Defendant acted fraudulently, maliciously, oppressively, and in conscious disregard of Plaintiff's rights in a despicable fashion. Plaintiff is therefore entitled to punitive damages in a sum sufficient to punish and deter Defendant so that such conduct will not take place again.

## AS AND FOR A THIRD CAUSE OF ACTION

### (GENERAL BUSINESS LAW § 349 against BEACON HEALTH OPTIONS)

63. Plaintiff incorporates by reference each and every paragraph of this Complaint as though set forth more fully herein in this cause of action.

64. Plaintiff paid the premiums relating to his health insurance benefits while a resident of New York.

65. Plaintiff's policy was a standard form policy which is typical for all consumers interacting with Defendant.

66. Upon information and belief, in processing claims, Defendant utilize and employ standardized claim forms and systems of review to apply their wrongful claim handling practices.

67. As such, Plaintiff was a consumer for purposes of New York General Business Law § 349, which is designed to broadly protect consumers.

68. Pursuant to New York General Business Law §349, in transacting business with Plaintiff, who was a consumer, Defendant was prohibited from engaging in deceptive acts or practices in the conduct of its handling of disability claims.

69. Defendant's conduct as outlined above is consumer-oriented conduct, in that Defendant handles a large number of disability claims for similarly situated consumers like Plaintiff.

70. Defendant has a broad-based pattern and practice of claims adjudication and delay in the prompt adjudication of its claim determinations, which largely follows the approach taken against Plaintiff herein.

71. Defendant's conduct has a broad impact on the public.

72. Defendant's conduct in the handling of Plaintiff's claim and similar claims was materially unfair, misleading, and/or constituted a deceptive act or practice in the conduct of Defendant's business or trade.

73. Plaintiff has suffered injury and damages, and/or will suffer injuries or damages, as a result of Defendant's conduct.

## PRAYER FOR DAMAGES
## AS TO ALL CAUSES OF ACTION

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as against BEACON HEALTH OPTIONS:

74. General damages for the failure to provide the promised benefits under the subject contract of insurance in a sum to be determined at the time of trial, and a return of the payments which Plaintiff paid to View Point and Elevations;

75. General damages for mental and emotional distress and other incidental damages in a sum to be determined at trial;

76. Punitive and exemplary damages;

77. Special damages in an amount according to proof;

78. For costs of suit herein incurred;

79. For reasonable attorneys' fees and treble damages pursuant to NY General Business Law §349; and

80. For such other and further relief as the Court deems just and proper.

### JURY TRIAL IS HEREBY DEMANDED

Dated: February 16, 2023

Respectfully submitted,

**DL LAW GROUP**

By: s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman

Dated: Carle Place, New York
February 16, 2023

By: s/ Justin C. Frankel
Justin C. Frankel
Jason A. Newfield
FRANKEL & NEWFIELD, P.C.
1 Old Country Road, Suite 429
Carle Place, NY 11514
(516) 222-1600
*Attorneys for Plaintiff, Oliver W.*